726 So.2d 1055 (1999)
Benedict N. NWOKOLO, et ux., Plaintiffs-Appellants,
v.
Robert H. TORREY, et ux., Defendants-Appellees.
No. 31,412-CA.
Court of Appeal of Louisiana, Second Circuit.
January 20, 1999.
Bobby L. Culpepper & Associates By Bobby L. Culpepper, Jonesboro, for Plaintifffs-Appellants.
Dawkins, Carter & Shadoin By Robert E. Shadoin, Ruston, for Defendants-Appellees.
Before HIGHTOWER and PEATROSS, JJ., and PRICE, J. Pro Tem.
PEATROSS, J.
This action arises out of a dispute over a landlord's retention of a lessee's security deposit and the condition of the leased premises on the lessee's vacating the premises. Benedict and Rita Nwokolo, lessees ("Nwokolos"), filed suit against Robert H. Torrey and his wife, landlords ("Torreys"), for return *1056 of their security deposit, statutory penalties and attorney fees. The Torreys filed a reconventional demand asserting that the Nwokolos inflicted significant damages to the leased premises and requested judgment against the Nwokolos for the cost of the repairs ($956.80). The trial court found in favor of the Torreys, awarding $656.80, subject to a credit of $400, the amount of the Nwokolos' security deposit, and denied the Nwokolos' request for statutory penalties and attorney fees. The Nwokolos appeal the judgment of the trial court. The Torreys have answered the appeal and are seeking damages for frivolous appeal. At issue is the sufficiency of the evidence to establish damage beyond ordinary wear and tear and compliance with La. R.S. 9:3251. For the reasons stated herein, we reverse in part and affirm in part.

FACTS
The Nwokolos leased one of the units in a duplex, located on Tech Farm Road in Ruston, from the Torreys. On February 24, 1996, after approximately five years of leasing the unit, the Nwokolos notified the Torreys of their intent to vacate the premises on March 31, 1996. Mr. Torrey received the letter February 27. Mr. Nwokolo requested that the Torreys credit his $400 security deposit to the rent due for March. After speaking with Mr. Torrey, Kitty Fuller[1], who managed the duplex for the Torreys, advised Mr. Nwokolo that such an arrangement was not acceptable. Mr. Nwokolo, therefore, paid the rent for March. The Nwokolos moved out of the unit during the last week of March. On March 30th, the Nwokolos returned the keys by mail to the manager along with a written request that the security deposit be mailed to the Nwokolos' new address which was provided. The Nwokolos never received the security deposit.

DISCUSSION
We will first address the Nwokolos' claim that the Torreys' retention of the security deposit was unlawful, entitling them to damages and attorney fees. A landlord must return a security deposit within one month of the termination of the lease. The landlord, however, may retain all or part of the deposit to defray the cost of repairs for unreasonable wear. If any portion of the security deposit is retained, the landlord must forward to the tenant, within one month after the tenancy terminates, an itemized statement accounting for the retained proceeds and giving the reasons therefor. La. R.S. 9:3251. Willful failure by the landlord to comply with 9:3251 gives the tenant the right to recover actual damages or two hundred dollars, whichever is greater, from the landlord or from the landlord's successor in interest. Failure to remit the deposit within 30 days after written demand for a refund shall constitute willful failure. La. R.S. 9:3252. La. R.S. 9:3253 provides that the court may, in its discretion, award costs and attorney fees to the prevailing party in an action brought under 9:3252. These statutes are penal in nature and must be strictly construed. The penalty may be assessed when the action complained of is a clear and unmistakable violation of the express statutory terms. Garb v. Clayton-Kent Builders, Inc., 307 So.2d 813 (La.App. 1st Cir.1975).
An appellate court may not set aside a trial court's factual findings absent clear or manifest error. Thompson v. Coates, 29,333 (La.App.2d Cir.5/7/97, 694 So.2d 599), writ denied, 97-1442 (La.9/26/97), 701 So.2d 985. To reverse a trial court's factual determination a court of appeal must find from the record that there is no reasonable factual basis for the findings and that the findings are clearly wrong or manifestly erroneous. Id.
James Fuller inspected the unit after the Nwokolos moved out and subsequently wrote a letter to Mr. Torrey outlining the damages to the unit. Mr. Fuller testified in detail about the contents of his letter to Mr. Torrey. Mrs. Fuller testified she received a copy of a subsequent letter written by Mr. Torrey to the Nwokolos indicating that he *1057 intended to retain the deposit and itemizing the damages and cost of repairs to the unit. The trial court's factual finding that the landlord "did indeed send a letter" is not supported by the record. There is no testimony or other evidence in the record that Mr. Torrey mailed the letter to the Nwokolos, who asserted they did not see the letter explaining retention of their security deposit until their own attorney showed it to them.
The trial court's reliance on Garb, supra, is misplaced. That matter was tried by stipulation which included the fact that the landlord mailed the letter to the tenant at the address left by the tenant. The tenant did not receive the notice. In Garb, failure of the tenant to receive the notice was not due to any fault by the landlord and the fact that the tenant did not receive the notice did not render compliance with the statute defective. Garb, supra.
In the instant matter, the Torreys did not testify. Neither Mr. nor Mrs. Fuller testified that either of the Torreys mailed the letter to the Nwokolos. Since there is no proof in the record that Mr. Torrey actually mailed the letter, the trial court's finding to the contrary is manifestly erroneous. The Nwokolos, therefore, are entitled to a return of their security deposit and to an assessment of $200 in damages, the amount provided by statute and sought by the Nwokolos in the main demand.
We next address the Torreys' demand in reconvention for the cost of repairs to the premises. A review of the record regarding the reconventional demand reveals no manifest error in the trial court's findings concerning the damages present when the Nwokolos vacated the unit. When testimony conflicts, reasonable evaluations of credibility and inferences of fact should not be disturbed, even if the appellate court concludes that its own factual evaluations and inferences are as reasonable as those made by the trial court. Yuska v. HCA Health Services of Louisiana, Inc., 28,878 (La.App.2d Cir.12/11/96), 684 So.2d 1093. The trial court's factual findings must be given great discretion because it has the superior capacity to assess the credibility of witnesses; only the trier of fact can be aware of the variations in demeanor and tone of voice that bear so heavily on the listener's understanding and belief in what is said. Perow v. Lenzly, 30833, 30834 (La.App.2d Cir.8/19/98), 716 So.2d 519.
The record supports the trial court's finding that the Torreys are entitled to recover $656.80 for the cost of repairs to the premises. For $60 Mr. Fuller hired a woman to clean the stove, vent hood, dishwasher, windows and carpets. Fuller spent $24.59 for a carpet shampoo machine. He assisted the woman in cleaning the stove, which was very greasy under the burners and had a very dirty oven. The windows had not been cleaned and the one in the master bedroom was mildewed. Fuller paid $47.50 to Curtis Sherill for the repair of window screens which had been pushed out of the frames; he expended $15.87 for replacement knobs, drawer pulls and globes for light fixtures. Replacement knobs for the stove cost $21.58. Mrs. Fuller testified that a new stove was installed in the apartment shortly after the Nwokolos began their occupancy. The Fullers received some keys from Mr. Nwokolo in the mail. The returned keys, however, according to Mr. Fuller, did not fit the storage room which had to be rekeyed. Mr. Fuller had to replace a living room passage door set which had been replaced with a key lock type set. The labor charge of $60 was for an entire day of Mr. Fuller's time spent repairing the foregoing.
Red shag carpet had been placed on the tile floor with red cellophane-type tape which left a residue when removed. Efforts to remove the stain were unsuccessful. The $100 estimate for the broken dining room fixture was for a replacement fixture and installation by an electrician. Although the yard was mowed, Mr. Fuller had to remove leaves and items from flower beds. The back yard area contained old student desks. Mr. Fuller charged $20 for yard clean up and moving the items to the street for trash collection. Mr. Fuller also charged $75 to the Nwokolos for moving a remnant of good carpet from the living room into the bedroom to replace a portion of the carpet which had *1058 been burned with an iron.[2] Fuller stated that the damage to which he testified went beyond normal wear and tear.
Mrs. Nwokolo testified that the house was in bad condition when they moved in. Shortly after moving in, the Nwokolos complained to Mr. Torrey about the dirty carpeting, which Mr. Torrey agreed to replace. According to Mrs. Nwokolo, since there was not enough new carpet to cover the dining room, the workers hired by Mr. Torrey installed red shag carpet there belonging to the Nwokolos. Mrs. Nwokolo also testified that prior to moving out, they rented a steam cleaning machine, and the boys whom they had hired to help them clean the unit shampooed the carpets.
Mrs. Nwokolo stated that she and her husband each cleaned the stove. She further stated that they replaced missing knobs on the stove. The Nwokolos, according to Mrs. Nwokolo, also cleaned the dishwasher and the vent hood and they washed the windows inside and out. Mrs. Nwokolo stated that she and her husband left these items in better repair when they moved out than when they moved in. Mrs. Nwokolo recalled no missing screens, broken light fixtures or missing cabinet knobs.
Since the attic was already full when they moved in, Mrs. Nwokolo stated they only put a few things there and removed them when they moved their property out. She was unaware of damage to the ceiling due to excessive weight in the attic and opined that any damage would have been done before they arrived. Mrs. Nwokolo denied knowledge of a hot iron imprint on the carpet and of damage to the attic stairs which, according to her, wobbled when they moved in. The sliding closet doors did not work properly when the Nwokolos moved in and they were unable to get them fixed, so they left the doors open. Both Mr. and Mrs. Nwokolo testified that they cleaned their yard and their neighbor's yard prior to moving out.
Mr. Nwokolo agreed with the information provided the court by his wife. Mr. Nwokolo testified that he returned more keys than he was given on moving into the unit. He had no information about a missing passage door lock or an iron imprint on the bedroom carpet. Concerning the damaged ceiling, Mr. Nwokolo explained that an air conditioner repairman sent by Mr. Torrey stepped on the ceiling instead of a beam and caused the damage.
Jewell Jackson, a neighbor, visited the Nwokolos' unit for approximately ten minutes as they moved out. The surfaces of the stove appeared clean, but she did not look inside. She did not observe the stove hood, the dishwasher, the windows, the screens, the light fixtures or the imprint of an iron on the bedroom carpet. Ms. Jackson stated that each duplex consisted of two units with a carport in the middle. In the carport, a pulldown stair gave access to the common attic area which was available to people living on both sides of a duplex.
Amos Theodore Lotten, Jr., a student at Grambling, testified that he helped the Nwokolos in cleaning the apartment. In addition to removing trash from the house, cleaning the oven and working in the yard, he assisted in cleaning the carpet, which appeared in satisfactory condition. He did not notice the red shag carpet which had been placed over a green tile linoleum floor. He observed no screens, light fixtures or cabinet knobs that needed fixing or replacing and did not go into the bedrooms or into the attic.
Notwithstanding the foregoing testimony, the photographs in evidence show that the Nwokolos left a large number of items in the attic which had to be removed. Mrs. Fuller's statement that a new stove was placed in the unit is corroborated by the receipt to Mr. Nwokolo to reimburse him for installing a converter. The trial court determined the defense testimony to be more credible than that of the Nwokolos. The Nwokolos' testimony was frequently inconsistent with each other, and their witnesses did not assist their position. We find no manifest error in the trial court's findings. Damages totaling *1059 $656.80 were charged to the Nwokolos for the following: cleaning stove, hood, dishwasher, windows and carpet; bedroom ceiling light repair; stove knobs; re-keying locks; replacement of missing passage door lock set; labor; carpet to replace damage from an iron imprint; removal of red shag carpet; repair to damaged green tile due to installation of red shag; disposal of abandoned items in attic; and replacement of light fixtures.
The trial court denied the Torreys' recovery for alleged damages to the ceiling in the attic, the attic stairs and the sliding doors. The attic area was accessible to other renters and workmen. There was no proof as to the condition of the ceiling when the Nwokolos moved in and the damage could have been caused by others or the ceiling could have deteriorated over time. Likewise, the attic stairs were used by numerous parties. Absent proof as to the condition of the sliding doors when the tenants arrived, the sliding doors could have been damaged through normal wear and tear.
Both sides seek attorney fees as the prevailing party under La. R.S. 9:3253, which makes the award discretionary with the court. Under the facts and circumstances of this case, we decline to award attorney fees to either the Torreys or the Nwokolos. In light of the foregoing, the Torreys' answer to the appeal to seek damages for frivolous appeal is without merit.
To the extent that the Nwokolos were denied the $200 penalty provided by La. R.S. 9:3252, the judgment of the trial court is reversed in part. To the extent that the Torreys were awarded the sum of $656.80 for damages exceeding ordinary wear and tear to the dwelling, the judgment of the trial court is affirmed, subject to the $600 credit due the Nwokolos for their $400 security deposit and $200 penalty. Costs of the proceedings are to be split equally by the appellants and appellees.
REVERSED IN PART; AFFIRMED IN PART.
NOTES
[1] Kitty Fuller managed the property for the Torreys who resided in Florida. James Fuller, Kitty Fuller's husband, assisted his wife in the maintenance of the property, including making some of the repairs done to the unit occupied by the Nwokolos after they moved out.
[2] We note that after the Nwokolos vacated the unit, the carpet was replaced at a total cost to the Torreys of $900. The Nwokolos were only charged with a portion of that expense attributable to replacing the damaged carpet in the bedroom.