850 So.2d 1070 (2003)
Lane T. CHISHOLM and Susan Chisholm, Plaintiffs-Appellants,
v.
CLARENDON NATIONAL INSURANCE COMPANY, Jerry L. Parker, Individually and d/b/a Action Mobile Home Movers and Max Robinson, Defendants-Appellees.
No. 37,022-CA.
Court of Appeal of Louisiana, Second Circuit.
July 9, 2003.
Rehearing Denied August 14, 2003.
*1071 Sam N. Gregorio, Shreveport, Stanga & Mustian, by Alonzo T. Stanga, III, Metairie, for Appellants.
Lunn, Irion, Salley, Carlisle & Gardner, by James A. Mijalis, Shreveport, for Appellees Clarendon National Ins. Co., Jerry L. Parker and Max Robinson.
*1072 Before STEWART, CARAWAY and MOORE, JJ.
STEWART, J.
This is an appeal from a wrongful death suit brought by the family of Jeremy Chisholm against Jerry Parker ("Parker") and Max Robinson ("Robinson") individually and d/b/a Action Home Movers ("Action") and its insurer, Clarendon National Insurance Company ("Clarendon"). Jeremy died as a result of an accident that occurred when he collided with a mobile home being moved by Parker and Robinson. Following a trial on the merits, the jury returned a verdict of 10-2 finding no negligence by Parker or Robinson. Next, the trial judge denied the plaintiffs' motion for Judgment Notwithstanding the Verdict (JNOV) and motion for a new trial. However, finding that the trial court committed manifest error, we reverse and render.

FACTS
On March 3, 2000, at about 4:00 p.m., 21-year old Jeremy Chisholm was driving north on Louisiana Highway 171 headed to Oklahoma City, Oklahoma from Leesville, Louisiana. At this same time, Jerry Parker and Max Robinson of Action Home Movers were moving a mobile home south on Highway 171. Robinson was driving the vehicle which pulled the mobile home, also called a toter, and Parker was driving the escort vehicle which is far ahead of the toter. The width of Highway 171 is eleven feet wide with a seven foot shoulder. As Parker approached Chisholm on the highway, he moved his vehicle to the centerline of the highway in an effort warn oncoming motorists. Robinson's friend, James Weldon, was a passenger in the toter, and he noticed the Chisholm vehicle as it passed them on the highway. However, Robinson admitted that he was not paying attention to the Chisholm vehicle as it passed because he was looking out of the side mirror and he was preoccupied with the stalled traffic behind him. Weldon shouted for Robinson to "Watch out!," but it was too late, and the Toyota that Chisholm was driving collided with the front edge of the mobile home. The collision caused the decapitation and instant death of Chisholm. Following a trial on the merits, the jury returned a verdict 10-2 in favor of the defendants. Following the trial court's denial of the plaintiffs' motion for JNOV and a new trial, this appeal ensued.

DISCUSSION
Standard of Review
A court of appeal may not set aside a trial court's or a jury's finding of fact in the absence of manifest error or unless it is clearly wrong. Rosell v. ESCO, 549 So.2d 840 (La.1989); Arceneaux v. Domingue, 365 So.2d 1330 (La.1978). Reversal of findings of fact on appeal requires that (1) the appellate court find from the record that no reasonable factual basis exists for the trial court's finding, and (2) the appellate court determine that the record establishes the finding is clearly wrong or manifestly erroneous. Stobart v. State, Through Department of Transportation and Development, 617 So.2d 880 (La.1993).
A JNOV is a procedural device authorized by La. C.C.P. art. 1811 whereby the trial court may correct a legally erroneous verdict by modifying fault or damages, or both, that the jury may have assessed. Matthews v. Arkla Lubricants, Inc., 32,121 (La.App.2d Cir.8/18/99), 740 So.2d 787; Greene v. Fox Crossing, Inc., 32,774 (La.App.2d Cir.3/1/00), 754 So.2d 339, writ denied, XXXX-XXXX (La.5/26/00), 762 So.2d 1108. If the opposing evidence is of such quality and weight that reasonable men in the exercise of impartial judgment might reach different conclusions, the motion should be denied. To determine *1073 that the evidence was insufficient as a matter of law requires a finding that no valid line of reasoning and permissible inferences could possibly lead rational persons to the conclusions reached by the jury. Matthews, supra. The JNOV should not be granted merely when there is a preponderance of evidence for the mover. In making this determination, the trial court should not evaluate the credibility of the witnesses, and all inferences or factual questions should be resolved in favor of the non-moving party. Anderson v. New Orleans Public Service, Inc., 583 So.2d 829 (La.1991); Craighead v. Preferred Risk Mutual Insurance Company, 33,731 (La.App.2d Cir.8/25/00), 769 So.2d 112, writ denied, 2000-2946 (La.12/15/00), 777 So.2d 1230.
As noted by this court in Gibson v. Bossier City General Hosp., 594 So.2d 1332 (La.App. 2d Cir.1991), the scales are clearly tilted in favor of the survival of the jury's verdict, but the trial court is left with a breadth of discretion which varies with the facts and events of each case. What the appellate court reviews is the decision of the trial judge, who has attempted to balance the great deference afforded to the jury's verdict against his obligation to insure that substantial justice was accomplished. Thus, in reviewing the trial court's determination regarding whether to grant a JNOV or new trial, the appellate court's review is limited to whether the trial court committed manifest error in its denial of the motions. Gibson, supra.
Finally, fault in a vehicular collision is determined by judging the conduct of each motorist under the facts and circumstances of each particular case. Matthews, supra.
Although the findings of the trier of fact are normally accorded much discretion, this particular decision is rife with manifest error. The jury concluded 10-2 that Chisholm was one hundred percent at fault for the accident that caused his death. We find that no reasonable view of the evidence submitted permits this conclusion. Our review of the evidence in this matter demands a reapportionment of the fault because reasonable men viewing the evidence could not have found the defendants free from fault.
Our review of the uncontested facts alone gives sufficient grounds for a reversal. Action had a sloppy mobile home moving operation. Parker admitted that he drove the escort at least 600 feet in front of the toter vehicle when the evidence clearly showed that a safer distance would have been 70-90 feet. By his own admission, Max Robinson, the driver of the toter, was grossly inattentive in failing to watch the road in front of him. He stated that he was preoccupied with the backlog of vehicles following the mobile home.
The testimony of each of the persons in the vehicles that were stuck behind the mobile home was that the trailer swung erratically across the center line from the southbound into the northbound lane and back to the shoulder making it difficult and hazardous to attempt to pass the mobile home. Salinda Bernard, who was in the second car following the mobile home, testified that she would have passed the mobile home, but it was too far over into the northbound lane for her to safely pass. Incidentally, Ms. Bernard was injured when the Chisholm vehicle exited the back of the mobile home and slammed into her car. Her husband, Adam, was driving the car at the time of the crash, and he testified that he briefly saw the Chisholm vehicle entirely within the northbound lane before the crash. He stated that the oncoming Chisholm vehicle prevented him from passing. Frankie Bossier, who was in the car immediately behind the mobile *1074 home, testified that the mobile home swerved frequently making passing difficult. However, she was unable to state what the position of the mobile home was immediately prior to the accident. The testimony of Maria Lopez demonstrated that the shoulder of the road was in poor condition such that Robinson could not have driven the mobile home over it without any trouble. This would explain her observation that oncoming cars from the northbound lane had to swerve to avoid the mobile home. A similar observation was made by Carolyn Gentry as she stated that cars were having to move over to the shoulder of the northbound lane to safely pass the mobile home.
The testimony at trial showed that Robinson failed to maintain a proper control over his load. Numerous witnesses testified that the mobile home was swerving, swaying, zigzagging, and fishtailing. Robinson himself said that it was rocking and shaking. Plaintiffs assert that one of the reasons Robinson could not control the load was because the trailer had no brakes. Moreover, Parker, as the escort driver, breached his duty to warn oncoming motorists by positioning himself at an excessive distance in front of the load. The Louisiana Regulations for Trucks Vehicles and Loads ("Regulations") require the escort vehicle to "maintain sufficient distance to warn oncoming vehicles, ... but not so far as to hinder control over the movement."
The defendants' negligence was not only demonstrated by the subjective testimony of witnesses, but also by the defendants' failure to follow the objective rules promulgated under Louisiana law. In addition to failing to maintain the escort vehicle at a sufficient distance to warn oncoming vehicles, they also failed to place the four warning flags on the widest parts of the vehicle as required by the Regulations. The defendants placed the flags on the mirrors of the toter vehicle rather than on the mobile home. Robinson admitted that there was nothing on the 16 feet × 80 feet mobile home to give a passing motorist a reference without a flag. The width of Highway 171 is only 11 feet. Therefore, the placement of the flags on the mirrors of the toter vehicle rather than the on the outer edges of the mobile home is of paramount significance.
Lieutenant John Kay ("Kay") testified that the placing of flags on the mirrors instead of the outer edges of the mobile home was in violation of the Regulations. Kay's testimony revealed that it was important to have these flags on the widest point of the mobile home to assist oncoming motorists to safely judge relative distances when passing the oversize load. It is undisputed that Chisholm should have seen this mobile home and tried to avoid it, but it simply cannot be concluded that the defendants' failure to adequately place warning flags on the outermost part of the mobile home did not significantly contribute to the accident. Unlike the oversize load signs, the flashing lights, the toter's headlights, and the red flags on the toter mirror, the purpose of the requirement is to assist the passing driver to avoid a collision with the mobile home. Even with all of the other warnings in place, it is still possible for an oncoming driver to not appreciate how far over into his lane the mobile home might be when flags are not properly placed on the sides of the mobile home. The evidence shows that there was a thirteen inch overlap of the Chisholm vehicle and the mobile home. It is clear that had the warning flags been placed on the widest part of the mobile home, they would have provided the necessary warning to Chisholm of the width of the mobile home.
We find that the defendants' failure to attach warning flags as required by the Regulations, their failure to maintain *1075 control over their vehicle, and their inattentiveness to oncoming traffic were significant causes of the accident. We note that when a warning is required, it is presumed that the injured party would have heeded and followed the warning had one been provided. Moore v. Chrysler Corp., 596 So.2d 225 (La.App. 2d Cir.1992), writ denied 599 So.2d 316 (La.1992) and writ denied, 599 So.2d 317 (La.1992); Cannon v. Cavalier Corp., 572 So.2d 299 (La. App. 2d Cir.1990). While it is undisputed that Chisholm should have seen the mobile home and taken greater care to take some evasive action, the defendants' compound negligence was a greater contributing cause to this accident. Robinson's negligence in failing to keep a proper lookout on the road was a cause in fact of the accident. A motorist's duty of care includes the duty to keep his vehicle under control and to maintain a proper lookout for hazards. Morris v. Flores, 36,932 (La. App.2d Cir.3/7/03), 840 So.2d 1257.
The facts show that Robinson did not see the Chisholm vehicle until it was 20 feet from him. Robinson admitted that there were no obstructions or anything else that would have prevented him from seeing past the escort vehicle, which was 600 feet away, yet he did not see the headlights of the Chisholm vehicle. With the obvious duty that the defendants owed to Jeremy Chisholm, and their breach of that duty, they are substantially liable under a comparative fault standard.
There was conflicting expert testimony concerning the exact location of the vehicles at the time of the accident. The plaintiff's expert, John Bates, concluded that the lack of proper safety equipment on the mobile home impaired the reaction time of Chisholm preventing him from taking evasive action. He contended that in spite of the small size of the shoulder, the mobile home could have been driven on the shoulder of the highway out of the way of oncoming traffic. Lastly, he asserted that the fact that much of the debris was in the northbound lane suggested that the initial impact took place in Chisholm's lane because the mobile home was over the center line.
The defendants' expert, Vernon Wade, asserted that the yaw marks, or marks made when a tire slides across the road in a perpendicular fashion, suggested that the Chisholm vehicle was actually in the southbound lane at the time of the accident. However, he admitted that there were no marks on the highway that definitively indicated the initial point of impact between the mobile home and the Chisholm vehicle.
Despite the competing testimony, we find that the preponderance of the evidence clearly suggests that the defendants bear a much greater degree of fault for the accident. The independent testimony of the witnesses to the accident demonstrates that the mobile home constantly swerved across the center lane into Chisholm's lane. The evidence shows that Parker drove the escort vehicle at a much greater distance than was acceptable under the Regulations. Robinson admitted that he was not paying attention to oncoming traffic as he drove the toter vehicle when he collided with the Toyota. Lastly, the evidence shows that the defendants were in violation of several safety regulations by failing to place the proper warning equipment on the mobile home. Thus, we find the judgment of the trial court was manifestly erroneous. Finding that the trial court's denial of the plaintiffs' motion for JNOV was manifest error, we must determine the facts de novo from the record and render a judgment on the merits. Rosell, supra; Holt v. Bethany Land Co., 36,888 (La.App.2d Cir.4/9/03), 843 So.2d 606.
Comparative Fault
Because we conclude the record establishes fault on the part of the defendants, *1076 we must apply the comparative fault factors announced in Watson v. State Farm Fire & Cas., Ins. Co., 469 So.2d 967 (La.1985), to apportion fault. When examining an accident using the Watson factors the court should consider (1) whether the conduct resulted from inadvertence or involved an awareness of the danger; (2) how great a risk was created by the conduct; (3) the significance of what was sought by the conduct; (4) the capacities of the actor, whether superior or inferior; and (5) any extenuating circumstances which might require the actor to proceed in haste, without proper thought.
Application of these factors leads us to apportion a greater percentage of fault to the defendants. We find that the record clearly demonstrates that the defendants ignored the danger associated with the business of moving the mobile home and that their failure to abide by the Regulations was a significant cause in fact of this accident and the death of Jeremy Chisholm. Moving a mobile home is not a simple process, and the testimony shows that it is not an easy task to keep the 16 feet × 80 feet, 29,000 pound load from swerving and obstructing the entire highway. However, the superior capacity of Parker and Robinson to appreciate the danger involved must weigh against them in this case. Jerry Parker decided to drive the escort vehicle at an improper distance ahead of the mobile home. Moreover, Parker should have made sure that the mobile home had the appropriate warnings required by law. Finally, Robinson's gross inattentiveness caused him not to see the Chisholm vehicle. Consequently, we reapportion fault in the following manner:

Jeremy Chisholm 30%
Max Robinson/Jerry Parker (individually 70%
and d/b/a Action Home Movers)
Clarendon National Insurance Company

Damages
Appellants contend that the jurisprudence supports a significant award of general damages in this matter. See Duncan v. Kansas City Railway Co., XXXX-XXXX (La.10/30/00), 773 So.2d 670 (affirming an award of $475,000 each to the parents of a 12 year old killed in a train collision); Harris v. Carter, 33,951 (La.App.2d Cir.10/4/00), 768 So.2d 827, writ denied XXXX-XXXX (La.1/5/01), 778 So.2d 602 (award of $315,000 for wrongful death in a police shooting). We agree.
The record demonstrates that Chisholm enjoyed a close family relationship. In fact, he was on his way to visit his mother and father before leaving for military assignment in Korea when he was killed. Jeremy's father, Lane, testified that he and his wife had undergone counseling to better deal with the loss of their only son. We find that their sense of loss and grief is amply demonstrated in the record.
Jeremy was 21 years old at the time of his death, and according to the testimony of Captain Vincent Nwafor, his Unit Commander at Ft. Polk, he had a bright and prosperous career ahead of him in the United States Army.
Accordingly, we award $350,000 per parent for loss of consortium. We also note other cases containing similar awards for the loss of an adult child. See Gladney v. Sneed, 32,107 (La.App.2d Cir.8/18/99), 742 So.2d 642, writ denied, 1999-2930 (La.1/14/00), 753 So.2d 215 (award of $315,000 to father for wrongful death of 25-year-old daughter was not abuse of discretion); Bryant v. Solomon, 97-2008 (La.App. 4th Cir.3/25/98), 712 So.2d 145 (affirming an award of $300,000 to one parent for the wrongful death of an adult daughter); Hasha v. Calcasieu Parish Police Jury, 94-705 (La.App. 3d Cir.2/15/95), 651 So.2d 865, writs denied, 95-0667, 95-0676 (La.4/28/95), 653 So.2d 592, 593 *1077 (award of $325,000 per parent for loss of 18-year-old son was not manifestly erroneous).

CONCLUSION
For the foregoing reasons, we reverse and vacate the ruling of the trial court finding that the Robinson and Parker were zero percent at fault. We hereby render judgment apportioning fault for the accident that resulted in the death of Jeremy Chisholm among the parties as follows:

Jeremy Chisholm 30%
Max Robinson/Jerry Parker (individually 70%
and d/b/a Action Home Movers)
Clarendon National Insurance Company

Accordingly, we render judgment in favor of Lane Chisholm and Susan Chisholm and against Jerry Parker and Max Robinson individually, and d/b/a Action Home Movers, and their insurer, Clarendon National Insurance Company for damages of $350,000 each to Lane Chisholm and Susan Chisholm. This award shall be reduced by the percentage of fault attributable to Jeremy Chisholm. Costs of this appeal are assessed to the appellee.
REVERSED, VACATED, AND RENDERED.
CARAWAY, J., concurs with written reasons.
CARAWAY, J., concurring,
I agree with the majority in determining that the jury's verdict was manifestly erroneous and clearly wrong. On the critical issue of the location of the toter and the mobile home, it is unreasonable to conclude that the mobile home had not intruded over into the decedent's lane of travel and was not a cause-in-fact of the accident. The defendants' duties to properly alert the decedent to the obstruction in his lane of travel were therefore breached.
This concurrence is to make clear that our allocation of fault was made de novo without any deference to the jury verdict. Contrast, Cox v. Moore, 01-878 (La.App. 3d Cir.12/12/01), 805 So.2d 277. The reallocation of fault under Clement v. Frey, 95-1119 (La.01/16/96), 666 So.2d 607, requires deference to a trier-of-fact, who has found both the plaintiff and the defendant at fault under our comparative fault regime. Nevertheless, when the fact finder incorrectly finds no fault on one party and conducts no analysis under Watson, such legal error skews the process altogether, requiring de novo review. Lasha v. Olin, 625 So.2d 1002 (La.1993). While a trier-of-fact could reasonably apportion a lesser amount of fault on defendants in this case, this court has allocated them 70% without deference to the jury's conclusion regarding their lack of fault.

APPLICATION FOR REHEARING
Before BROWN, WILLIAMS, STEWART, CARAWAY, and MOORE, JJ.
Rehearing denied.