WILLIAMS, J.
This action arises out of a dispute over a landlord’s retention of a tenant’s security deposit because of the condition of the leased premises when vacated by the tenant. Defendant/Appellant, Rhonda Henley (“Henley”), seeks reversal of the trial court’s judgment awarding plaintiff the sum of $1,050 with legal interest from the date of judicial demand and attorney’s fees in the amount of $750. Plaintiff/Appellee, Susan Vinson (“Vinson”), answered the appeal seeking an increase in the award of attorney’s fees to $2,500. For the following reasons, we amend the judgment and, as amended the judgment is affirmed.

FACTS

Plaintiff, Susan Vinson, entered into a contract with Rhonda Henley on October 12, 2001, to lease the premises located at 3011 John Cole Place in Monroe, Louisiana. Vinson sought a temporary residence while repairs were being made to her townhouse for damages suffered in a fire. The term of the lease was three months and provided for a monthly rent of $1,100. The lease also required Vinson to provide a deposit equivalent to one month’s rent as a damage deposit. The provision in the lease regarding the damage deposit read as follows:
Tenant has deposited with Lessor the sum of $1,100 dollars as a deposit against damages. The Tenant does not have the option to apply this damage deposit against the final month’s rent, unless outstanding, then said deposit shall be forfeited to Lessor. The deposit shall be returned to Tenant if, at the termination of the lease, the premises are left undamaged and broom clean. If it is necessary for the Lessor to repair any damage or to have the premises cleaned, an itemized statement shall be submitted by Lessor to Tenant within 30 days after the property has been vacated, if Tenant requests said statement and provides Lessor with his/her address for mailing such notice, and the balance of the deposit (if any) will be returned |gat that time. Any deficiency shall be paid to Lessor within 30 days of receipt of the notice.
The lease does not contain any prohibitory language with regard to whether the lessee is allowed to smoke in the rental property.
Vinson vacated the premises when the lease expired on January 16, 2002. Vinson’s belongings were moved in and out of the rental property by a company operating under the name, ServiceMaster. On *896 both occasions, Chadwick Lloyd, an employee of ServiceMaster, was a member of the crew moving Vinson’s belongings. Vinson returned the keys to Henley at her beauty parlor on January 16, 2002, and asked Henley to mail her damage deposit.
On January 31, 2002, Henley’s attorney forwarded a letter to Vinson indicating that “substantial damage” had been done to the rental property during her occupancy and that the damage deposit was going to be applied to repair those damages. The letter indicated that if any portion of the deposit remained after the repairs had been made, the balance would be returned to her. On February 6, 2002, Vinson’s attorney sent a letter to Henley’s attorney requesting an itemized statement of the proceeds, which Henley contended needed to be retained for repairs to the leased premises. Vinson’s attorney forwarded a follow-up letter on February 21, 2002, reiterating that request. Neither the amount deposited nor an itemized statement of the damages or necessary repairs was sent to Vinson.
On May 8, 2002, Vinson filed suit against Henley in Monroe City Court for the return of her damage deposit, statutory penalties and attorney’s fees under LSA-R.S. 9:3251, et seq. Henley answered and reconvened [.^alleging that Vinson’s deposit was insufficient to cover the costs of the substantial damage done to the property and requested that Vinson be ordered to pay the expenses which Henley incurred in repairing the premises that were over and above the amount of the damage deposit. The matter was tried on January 15, 2003.
At trial, Vinson, a smoker, testified that she resided in the rental property for three months between October 16, 2001 and January 16, 2002. She admitted that while living there, she smoked inside the home. However, Vinson stated that because she worked all day, she was ordinarily only in the house during the evenings. Vinson testified that she vacated the property at the end of the lease, returned the keys to Henley at the beauty parlor where she worked and asked Henley to return her deposit to her at her townhouse address. She testified that although she moved in with a friend for a period of time[1] because the repairs on her townhouse had not been completed, she continued to receive all of her mail at her townhouse address, where she received the aforementioned letter from Henley’s attorney.
Also testifying on Vinson’s behalf was ServiceMaster employee, Lloyd Chadwick. He testified that as part of his work for ServiceMaster, he does smoke repair work almost every day. Mr. Chadwick stated that he had taken part in moving Vinson both into and out of the rental property. He testified that when ServiceMaster came to move Vinson out of the property _jjin January 2002, he went in every room of the house to retrieve Vinson’s belongings. He did not recall noticing any smoke damage in the house or smelling any unusual smoke odor in the home when they moved Vinson out of the home. He also testified that had there been a smoke odor saturating the carpet, the problem could have been resolved by shampooing the carpet. He stated the approximate cost of shampooing the carpet in the home was $45 for the carpet in the bedroom and $18 for the carpet in the hallway.
*897 Lastly, the plaintiff called the owner of ServiceMaster, Rupert Lange.[2] Mr. Lange testified that an ozone machine could be used as an alternative to shampooing a carpet to eliminate smoke odors. He testified that using an ozone machine is an almost foolproof way of eliminating smoke odors from a carpet and that an ozone machine can be rented at an approximate cost of $45 per day.
Both the defendant and her husband, Brett Adams, testified on her behalf. Mr. Adams testified that he had entered the rental property on a couple of occasions prior to the date Vinson vacated the premises. In doing so, he observed that the house was littered with dinner plates with extinguished cigarette butts on them. He testified that there was a pervasive smoke odor in the home which had not been there prior to Vinson’s tenancy. He attested to the fact that he, Henley’s mother and stepfather cleaned the house for Henley because she is sensitive to odors. On cross-examination, Mr. Adams admitted that no attempt was made to shampoo the carpet prior to replacing it.
| ¡^Henley testified that when Vinson indicated that she was going to move out at the end of the lease term, Henley entered the house so that she could show it to potential new renters. According to Henley, she entered the house the morning before she was scheduled to show it to a potential tenant and found that the house was filthy. She testified that she had to take the rest of the day off from work to scrub the floors and remove “everything from the walls and ... the commode, and the floors, that I possibly could get it in shape to see, for the renter to see.” Vinson moved out approximately two weeks later.
Henley testified that after Vinson vacated the property, she steam cleaned the carpet with her own carpet cleaner on two separate occasions and tried to air out the house every day by leaving the windows open all day. She admitted that she never had the carpet shampooed and did not contact anyone about having the carpet professionally treated, despite Vinson’s recommendation that she contact Service-Master. Henley testified that she did not have the carpet professionally cleaned because she did not want to go through the expense of doing something with which she was unfamiliar.
Despite Henley’s testimony that various realtors and potential renters and buyers had complained of the pervasive smoke odor in the home before the carpet was replaced, she did not call any such witnesses to testify to that fact. Henley replaced the carpet in April 2002 at a cost of $1,232.46. She presented a receipt from Lowe’s evidencing this amount.
|fiAt the conclusion of the testimony, the court rendered judgment in favor of the plaintiff, finding that Henley was indebted to plaintiff for $1,050, plus attorney’s fees and court costs. A judgment to that effect, which fixed the amount of attorney’s fees at $750, was signed on January 21, 2003. This appeal followed.

DISCUSSION

Henley contends the trial court erred in finding that the damage deposit could not be properly applied to the replacement of the carpet. Henley also argues that because she was in “good faith” in withholding the damage deposit to replace the carpet, the trial court erred in ordering her to pay Vinson’s attorney’s fees. Vinson has answered the appeal requesting that the *898 attorney’s fee award be raised from $750 to $2,500.
LSA-R.S. 9:3251 provides, in pertinent part:
A. Any advance or deposit of money furnished by a tenant or lessee to a landlord or lessor to secure the performance of any part of a written or oral lease or rental agreement shall be returned to the tenant or lessee of residential or dwelling premises within one month after the lease shall terminate, except that the landlord or lessor may retain all or any portion of the advance or deposit which is reasonably necessary to remedy a default of the tenant or to remedy unreasonable wear to the premises. If any portion of an advance or deposit is retained by a landlord or lessor, he shall forward to the tenant or lessee, within one month after the date the tenancy terminates, an itemized statement accounting for the proceeds which are retained and giving the reasons therefor. The tenant shall furnish the lessor a forwarding address at the termination of the lease, to which such statements may be sent.
LSA-R.S. 9:3252(A) provides:
A. The willful failure to comply with R.S. 9:3251 shall give the tenant or lessee the right to recover actual damages or two hundred dollars, whichever is greater, from the landlord or lessor, or from the lessor’s successor in interest. Failure to |7remit within thirty days after written demand for a refund shall constitute willful failure.
LSA-R.S. 9:3253 provides:
In an action brought under La. R.S. 9:3252, the court may in its discretion award costs and attorney’s fees to the prevailing party.
Accordingly, under the provisions of LSA-R.S. 9:3251(A), the landlord may retain all or any portion of the deposit which is reasonably necessary to remedy a default of the tenant or to remedy unreasonable wear to the premises. If any portion of the deposit is retained, the landlord must forward to the tenant, within one month after the date the tenancy terminates, an itemized statement accounting for the retained proceeds and giving the reasons thereof. If the landlord willfully fails to do so, the tenant shall be entitled to actual damages or two hundred dollars, whichever is greater. Furthermore, the court may in its discretion award attorney’s fees and costs to the prevailing party. Nwokolo v. Torrey, 31,412 (La.App.2d Cir.1/20/99), 726 So.2d 1055.
An appellate court may not set aside a trial court’s factual findings absent clear or manifest error. Chisholm v. Clarendon National Insurance Company, 37,022 (La.App.2d Cir.7/9/03), 850 So.2d 1070. To reverse a trial court’s factual determination, a court of appeal must find from the record that there is no reasonable factual basis for the findings and that the findings are clearly wrong or manifestly erroneous. Chisholm, supra.
Henley argues that the trial court erred in concluding that the damage deposit could not be applied to the replacement of the carpet after its initial finding that “substantial” and “severe” damage had been done by the |stenant’s smoking in the leased premises. Her argument is rooted in the following statement by the trial judge:
Based on the testimony heard this morning and this afternoon, this Court does not find that the damages described here, and the substantial damage or severe damage, is the type that is contemplated uh, by this contract and further finds that defendant is justly and fully indebted unto Ms. Susan Vinson in *899 the amount of $1,050, plus attorney’s fees and all court costs.
We do not interpret this statement as reflecting a factual finding by the trial court that “substantial” or “severe” damage was done to the leased premises. While the trial court’s statement could have been more clearly stated with respect to the phrase “and the substantial damage or severe damage,” a literal reading of the statement does not reflect the factual finding suggested by Henley on appeal. To the contrary, the trial court’s ruling reflects a finding that the evidence presented did not substantiate the allegation that damage had been done to the carpet which warranted its replacement.
LSA-R.S. 9:3251 and the instant lease allow the landlord to retain any portion of the damage deposit which is necessary to repair or remedy any damage or unreasonable wear to the premises. While there was testimony from Henley and her husband that there was a pervasive smoke odor in the home after Vinson occupied it for three months, there was also testimony by Chadwick, the ServiceMaster employee, that there was no such odor. Furthermore, even assuming such an odor was present, the trial court would have been correct in denying reimbursement for the replacement of the carpet at a cost exceeding $1,200 when the landlord admits that she did not attempt the less costly alternatives of a professional cleaning or the use of |3an ozone machine. The evidence at trial suggested that these measures would have cost approximately $50.
Therefore, we find that the trial court was not manifestly erroneous in concluding that Henley failed to show that the replacement of the carpet was necessary to remedy the alleged damage to the house. Further, the trial court’s deduction of $50 from the amount of the deposit was not manifestly erroneous, given the testimony that a professional cleaning of the carpeted areas would have cost approximately $63 and rental of an ozone machine would have cost approximately $45.
For these reasons, we also find that the trial court did not err in awarding attorney’s fees to Vinson in the amount of $750. Henley argues that the award was erroneously made because there was no evidence that Henley acted arbitrarily or capriciously. We disagree. The evidence clearly shows that Vinson’s attorney made a written demand for an itemized statement, accounting for the deposit proceeds retained by Henley on February 6, 2002. No evidence was presented that such a statement was ever forwarded by Henley nor does Henley allege that she mailed one. Under LSA-R.S. 9:3252, Henley’s failure to provide such a statement within thirty days of written demand constitutes willful failure to comply with the requirements of LSA-R.S. 9:3251. This failure gives rise to the action for damages and for an award of attorney’s fees in favor of the prevailing party. LSA-R.S. 9:3252.
Accordingly, we affirm the trial court’s judgment, finding that Henley is indebted to Vinson for all but $50 of the initial damage deposit and | inordering her to pay Vinson $750 in attorney’s fees. Since Vinson did not include a request for the $200 statutory damages in her answer on appeal, we cannot award that amount.
Vinson has answered the appeal, seeking additional attorney’s fees for defending the appeal. As we have recognized in the past, an increase in attorney’s fees for services rendered on appeal is appropriate when the defendant appeals and obtains no relief. Haynes v. Shumake, 582 So.2d 959 (La.App. 2d Cir.1991). This policy takes on added importance when dealing with a law such as the Lessee’s Deposit Act, LSA-R.S. 9:3251 et seq., *900 which provides for attorney’s fees to make it feasible for a lessee to take legal action to recover sums which may not otherwise be practical to pursue judicially. Accordingly, we conclude that Vinson is entitled to an additional award of attorney’s fees for work associated with this appeal in the amount of $1,250.

CONCLUSION

For the foregoing reasons, we amend the judgment to include an award in the amount of $1250 for attorney’s fees incurred by the plaintiff/appellee in connection with this appeal. In all other respects, the trial court judgment is affirmed. Costs of this appeal are assessed to the defendant/appellant.
JUDGMENT AMENDED AND, AS AMENDED, AFFIRMED.

. While Vinson's testimony indicates that she moved in with a friend until June or July 2001, we assume that she meant 2002. Since she did not move out of the rental property until January of 2002, the context of the colloquy between Vinson and Henley's counsel makes it clear that Vinson’s stay with her friend post-dated her vacating the rental property.

. Rupert Lange's name was incorrectly spelled "Ruford” in the trial transcript.