903 So.2d 627 (2005)
Lila McELROY, Plaintiff-Appellee
v.
Beverly Shoap WILHITE, et al., Defendants-Appellants.
Beverly Wilhite, Plaintiff-Appellant
v.
Thomas Benton McElroy, et al., Defendants-Appellees.
Nos. 39,393-CA, 39,394-CA.
Court of Appeal of Louisiana, Second Circuit.
May 18, 2005.
*629 Rice & Kendig by William F. Kendig, Jr., Shreveport, for Defendant-Appellant, Beverly S. Wilhite.
Klotz, Simmons & Brainard by David Klotz, Eron J. Brainard, Amy-Elizabeth Brainard, Shreveport, for Plaintiff-Appellee, Lila McElroy.
Rice & Kendig by William F. Kendig, Jr., Shreveport, for Plaintiff-Appellant, Beverly S. Wilhite.
Tutt, Stroud & Bordelon by Charles G. Tutt, Shreveport, for Defendants-Appellees, Hartford Ins. Co. of the Midwest and Thomas B. McElroy.
Cimini & Associates by Gary T. Breedlove, Metairie, for Defendants-Appellants, National Automotive Ins. Co. and Beverly S. Wilhite.
Walker, Passman & Michiels by Kay H. Michiels, Alexandria, for Defendant-Appellant, Hartford Ins. Co. of the Midwest (# 3).
Frank J. Reeks, Jr., Sarah A. Kirkpatrick, Shreveport, for Intervenor-Appellee, Hartford Ins. Co. of the Midwest (# 2).
Frank J. Reeks, Jr., Sarah A. Kirkpatrick, Shreveport, for Defendant-Appellee, Thomas B. McElroy.
Before WILLIAMS, STEWART, CARAWAY, MOORE and LOLLEY, JJ.
STEWART, J.
Beverly Wilhite ("Wilhite") and her insurance carrier, National Automotive Insurance Company ("National"), and Hartford Insurance Company of the Midwest, the UM carrier of Thomas and Lila McElroy, appeal the judgment of the trial court dated June 18, 2004, finding Wilhite 100% at fault for the subject accident. For the reasons that follow, we reverse, render, and remand to the trial court for hearings consistent with this opinion.

FACTS
This matter arises from an intersectional collision that occurred on July 8, 2002, at the corner of Creswell and Linden Streets in Shreveport. Creswell is a two-lane north/south highway without traffic controls from Ockley up to Kings Highway. *630 Linden is an east/west street with a stop sign at the end of each two block section, including the intersection with Creswell. The speed limit at the location of the collision was 35 miles per hour.
Immediately before the collision, Thomas McElroy was eastbound on Linden Street. He claimed to have come to a complete stop at the stop sign at the corner of Creswell and Linden and to have looked both ways before proceeding. McElroy noted that there were no sight obstructions. However, he made it only half way into the intersection before being struck by Wilhite's vehicle.
Wilhite testified that she entered Creswell at Ockley and was headed toward Kings Highway. She noted that she usually sets her cruise control at 35 miles per hour to avoiding exceeding the speed limit. She first saw the McElroy vehicle as it approached the stop sign at Linden as she was crossing Wilder Place. She observed the passenger looking toward her and then back toward the driver. She assumed the van was going to stop. However, when she noticed that the McElroy vehicle was proceeding across Creswell, it was "too close" to avoid the collision.
Following a trial on the merits, Wilhite was found to be 100% at fault for the accident. This appeal ensued.

DISCUSSION

Causation
A trial court's factual findings are accorded great weight and will not be disturbed on appeal absent manifest error. Rosell v. ESCO, 549 So.2d 840 (La.1989). It is the duty of the trier of fact to weigh credibility and to accept or reject all or part of a witness's testimony. Welch v. Winn-Dixie Louisiana, Inc., 94-2331 (La.5/22/95), 655 So.2d 309; Marshall v. Caddo Parish School Board, 32,373 (La.App. 2d Cir.10/29/99), 743 So.2d 943. Where there is a conflict in the testimony, reasonable evaluations of credibility should not be disturbed on appeal. Rosell, supra. Where there are two permissible views of the evidence, the factfinder's choice cannot be manifestly erroneous or clearly wrong. Stobart v. State, Through DOTD, 617 So.2d 880 (La.1993).
Negligence is determined in Louisiana under the duty-risk analysis. The determination of liability in a negligence case usually requires proof of five separate elements: (1) proof that the defendant had a duty to conform his conduct to a specific standard (the duty element); (2) proof that the defendant's conduct failed to conform to the appropriate standard (the breach element); (3) proof that the defendant's substandard conduct was a cause-in-fact of the plaintiff's injuries (the cause-in-fact element); (4) proof that the defendant's substandard conduct was a legal cause of the plaintiff's injuries (the scope of liability or scope of protection element); and (5) proof of actual damages (the damages element). Boykin v. Louisiana Transit Co., Inc., 96-1932 (La.3/4/98), 707 So.2d 1225, 1230, rehearing denied, 4/24/98.

Duty of Motorist at Stop Sign
The duty of a motorist is controlled by a stop sign under La. R.S. 32:123 which states:
A. Preferential right of way at an intersection may be indicated by stop signs or yield signs.
B. Except when directed to proceed by a police officer or traffic-control signal, every driver and operator of a vehicle approaching a stop intersection indicated by a stop sign shall stop before entering the cross walk on the near side at a clearly marked stop line, but if none, then at the *631 point nearest the intersecting roadway where the driver has a view of approaching traffic on the intersecting roadway before entering the intersection. After having stopped, the driver shall yield the right of way to all vehicles which have entered the intersection from another highway or which are approaching so closely on said highway as to constitute an immediate hazard.
Louisiana courts have consistently held that a driver confronted by a stop sign at an intersection must bring his vehicle to a stop, apprize the traffic, and make sure that the way is clear before he enters the intersection. "To stop and then proceed in the immediate path of oncoming vehicles constitutes negligence." McCauley v. LaFleur, 213 So.2d 176, 179 (La. App. 3d Cir.1968), and cases cited therein. See also Toston v. Pardon, 03-1747 (La.4/23/04), 874 So.2d 791. He must also look for and then evaluate oncoming traffic before proceeding. Guillot v. Valley Forge, Ins. Co., 99-1044 (La.App. 3d Cir.12/8/99), 753 So.2d 891, 894. The duty also includes looking a second time before entering. Continental Ins. Co. v. Duthu, 235 So.2d 182 (La.App. 4 Cir.1970).
In contrast to the above cited duty of the motorist confronted with a stop sign, the duty of the favored motorist is quite minimal as noted in Sanchez Fernandez v. Gen. Motors Corp., 491 So.2d 633 (La.1986),
A motorist on a right of way street is entitled to assume that motorists on the unfavored street approaching a stop sign will obey the traffic signal and will stop, look, and yield the right of way to traffic proceeding on the favored street. Of course, once a right of way motorist has failed to yield the right of way, a new duty thereafter devolves on the right of way motorist to take reasonable steps to avoid an accident if there is enough time to afford him a reasonable opportunity to do so.
With regard to the favored motorists' duty, the courts have clarified, noting:
Furthermore, it is only in the exceptional case where the right of way motorist could have avoided the accident by the exercise of the very slightest degree of care that he will be considered guilty of negligence.
Modica v. Manchester Ins. & Indem. Co., 284 So.2d 791 (La.App. 4 Cir.1973); Shelvin v. Allstate Ins. Co., 99-833 (La.App. 3d Cir.11/3/99), 747 So.2d 160; McCoy v. Chambers, 403 So.2d 838 (La.App. 2d Cir.1981).
It is well settled that:
A motorist who is confronted with a stop sign at an intersection is required to bring his vehicle to a complete stop before entering the crossing, to appraise traffic in the intersecting street and to make certain that the way is clear for him to make a safe passage across the intersection before he enters it. When the motorist stops his vehicle before proceeding to cross a right of way street, he has performed only half of the duty which the law imposes upon him. To stop and then proceed in the immediate path of oncoming vehicles constitutes negligence.
McCauley v. LaFleur, 213 So.2d 176, 179 (La.App. 3d Cir.1968) and cases cited therein. We further note that Ballaron v. Roth, 221 So.2d 297, 300 (La.App. 4 Cir.1969), explains that:
[T]o merely stop for a stop sign is to perform only a part of the required duty; such action must be followed by a careful observation of traffic conditions and the motorist controlled by the stop sign must yield the right of way to all *632 vehicles lawfully proceeding on the favored roadway. (Citations omitted.)
Nonetheless, we note that "each intersectional accident is dependent upon and must be decided on its own facts." Crump v. Ritter, 583 So.2d 47, 50 (La.App. 2d Cir.1991), citing Ball v. Marquette Casualty Co., 176 So.2d 799 (La.App. 4 Cir.1965), writ denied, 248 La. 417, 179 So.2d 16.
Before entering the intersection, Mr. McElroy had a duty to come to a complete stop, to appraise traffic in the intersecting street, and to make certain the way was clear for passage. Vallery v. State, Department of Transportation and Development, 480 So.2d 818 (La.App. 3d Cir.1985), writ denied, 481 So.2d 1350 (La.1986).
The findings of the trier of fact are normally accorded much discretion. However, where documents or objective evidence so contradict the witness's story, or the story itself is so internally inconsistent or implausible on its face, that a reasonable factfinder would not credit the witness's story, the court of appeal may find manifest error even in a finding purportedly based on a credibility determination. Stobart v. State, supra. The trial court concluded that Wilhite was 100% at fault for the accident. We find that no reasonable view of the evidence submitted permits this conclusion. Our review of the evidence in this matter demands a reapportionment of the fault because reasonable men viewing the evidence could not have found the defendants free from fault.
Because we conclude the record establishes fault on the part of the defendants, we must apply the comparative fault factors announced in Watson v. State Farm Fire & Cas. Ins. Co., 469 So.2d 967 (La.1985), to apportion fault. When examining an accident using the Watson factors the court should consider (1) whether the conduct resulted from inadvertence or involved an awareness of the danger; (2) how great a risk was created by the conduct; (3) the significance of what was sought by the conduct; (4) the capacities of the actor, whether superior or inferior; and (5) any extenuating circumstances which might require the actor to proceed in haste, without proper thought.
Application of these factors leads us to apportion a greater percentage of fault to Mr. McElroy. During his testimony, McElroy noted that although he looked both ways before proceeding through the stop sign, he did not see Wilhite's vehicle prior to entering the intersection. However, his own testimony suggests that he did not keep a proper lookout for oncoming traffic. He admitted that he would not have looked as far as the next intersection, where oncoming vehicles would be visible and added that he would not have looked beyond one-half of the block. He also testified that he had not traveled past the middle of the intersection before being struck by the Wilhite vehicle. This clearly shows that the Wilhite vehicle was very close and should have been fully visible at the time McElroy entered the intersection.
"A motorist is held to see that which with due diligence he should have seen." Audubon Ins. Co. v. Knoten, 325 So.2d 624, 625 (La.App. 4 Cir.1976). McElroy's ability to make proper observation was not limited to one-half of a block. McElroy correctly testified he could have seen a vehicle all the way back to the Wilder Place intersection. Had he looked, he could have easily seen Wilhite's vehicle approaching before he entered the intersection. There is simply nothing in the record to explain why he did not see her at all, as he testified at trial, before he entered the intersection. As such, it was error by the trial court to conclude that McElroy had no fault for causing the accident *633 at issue. Consequently, we reverse the trial court and apportion 80% of the fault to Mr. McElroy for the accident at issue.
Ms. Wilhite's duty, as the driver on the favored thoroughfare, was one of ordinary care toward drivers entering from side streets. Coleman v. Rabon, 561 So.2d 897 (La.App. 2d Cir.1990). However, a motorist entering a favored street is entitled to assume that vehicles traveling on the favored street will obey the speed limit. Tillman v. Massey, 445 So.2d 749 (La.App. 4 Cir.1984); Tatum v. Old Republic Ins. Co., 94-157 (La.App. 3d Cir.10/5/94), 643 So.2d 419. Wilhite claims to have set the cruise control at the posted speed limit of 35 miles per hour as she drove down Creswell, only to disengage the cruise control by pressing the brakes when she initially saw the McElroy vehicle. However, she assumed the McElroy vehicle would stop and claimed to have immediately re-engaged the cruise control seconds before impact. Although Mr. McElroy presented no accident reconstruction or other expert testimony, the physical impact suggests that the Wilhite vehicle was traveling faster than 35 miles an hour when she hit the McElroy vehicle, knocking it over in the road.
Based on our analysis of the Watson factors, we conclude that Mr. McElroy was much more at fault than Ms. Wilhite. We find that Ms. Wilhite was not less than 5% at fault but no more than 20% at fault. Accordingly, we allocate Ms. Wilhite's fault to 20%, which is the lowest amount the trial court could have reasonably allocated to Wilhite and fix McElroy's fault at 80%. See Toston v. Pardon, XXXX-XXXX (La.4/23/04), 874 So.2d 791.

CONCLUSION
Finding that the trial court committed manifest error in its allocation of fault, we reverse the trial court's finding of 100% fault to Beverly Wilhite, render judgment apportioning 80% fault to Thomas McElroy and 20% to Beverly Wilhite, and remand this matter to the trial court for a determination of damages. Costs assessed to Thomas McElroy and Hartford Insurance Company.
REVERSED, RENDERED AND REMANDED.
CARAWAY, J., concurs in part and dissents in part with written reasons.
CARAWAY, J., concurring in part and dissenting in part.
I respectfully dissent to the portion of the majority's opinion allocating fault.
In this case, all members of the court agree that separate statutory duties were breached by each of the drivers. Wilhite was speeding in a 35 mph zone, a violation of La. R.S. 32:64, and McElroy failed to yield and entered the intersection without caution after stopping at a stop sign, a violation of La. R.S. 32:123. The trial court therefore erred in its conclusion that Wilhite's speeding was so overwhelming that McElroy's stop sign violation did not amount to fault. While we all agree on that error, my disagreement with the majority rests on the amount of deference which must be given to the fact finder's conclusion of Wilhite's overwhelming fault. The majority gives very little deference, resting most of the fault for the accident on the stop sign violation and not the speeding. The jurisprudence of our highest court, however, requires otherwise. Therefore, I would fix McElroy's fault at the lowest amount supported by the evidence. Better stated, because of the trial court's view of her speeding, Wilhite must be assessed the maximum amount of fault that is reasonable.
*634 Counsel for Wilhite correctly points out that giving deference to the trial court's one-sided fault determination is contrary to this court's ruling in Chisholm v. Clarendon Nat. Ins. Co., 37,022 (La.App. 2 Cir. 7/9/03), 850 So.2d 1070, (Caraway, J. concurring), writ denied, 03-2608 (La.1/9/04), 862 So.2d 983. In that case, the jury found the plaintiff 100% at fault, and this court reversed, placing 70% of the fault on the defendant. In my concurrence, I noted that "when the fact finder incorrectly finds no fault on one party and conducts no analysis under Watson, such legal error skews the process altogether, requiring de novo review." Id. at 1077. I therefore emphasized that the deference owed to the trier of fact for a true reapportionment of fault under Clement v. Frey, 95-1119 (La.1/16/96), 666 So.2d 607 did not apply. This view, however, of no deference to the trial court has now been tacitly overruled by the Louisiana Supreme Court's ruling in Toston v. Pardon, 03-1747 (La.4/23/04), 874 So.2d 791.
The Toston case similarly involved a jury's determination of no fault on an intoxicated driver who failed to yield at a stop sign to an oncoming car on a favored highway. The jury's zero assessment of fault, which was clear legal error, was nevertheless given deference by the supreme court which cited the Clement rule. The court stated that, while the driver's traffic violations could be assessed not less than 20% nor more than 50% in relation to the fault of a second tortfeasor, the DOTD, the court was required to select "the lowest amount the trial court could have reasonably allocated." Id. at 804. Accordingly, the stop sign violator in Toston was assessed only 20% of the fault.
Another case which demonstrates that the violation of a stop sign has no elevated fault status in Louisiana is James v. Jones, 99-966 (La.App. 5th Cir.3/22/00), 759 So.2d 896. With facts very similar to this accident, the collision in James involved a speeding police vehicle in a non-emergency setting and a driver who completely ran a stop sign after exiting an interstate highway. The police officer was driving 15 miles over the 45 mph speed limit and left skidmarks for 81 feet in an attempt to avoid the collision as he approached the intersection driving on the favored highway. He was assessed 70% of the fault for speeding while the driver who ran the stop sign was allocated only 30% fault.
The majority's opinion in the present case concludes that McElroy must be assessed 80% of the fault for this accident before ever addressing the evidence of Wilhite's breach of duty. Certainly, a driver's breach of duty for speeding can at some point, depending of the excessive rate of speed, be the primary cause of an intersectional collision despite an apparent stop sign violation by the opposing driver. Yet, the unusual conclusion of the trial court in this case placing 100% of the fault on the driver on the favored street because of speeding is given very little deference by the majority.
The evidence of Wilhite's speeding is highly circumstantial. Mixed inferences abound. For example, did McElroy not see the Wilhite vehicle because of his great lack of care upon entering the intersection, or did Wilhite's excessive closing speed cause him with a lack of depth perception, etc. to miss the import of the danger of the approaching vehicle? Wilhite did not brake before the accident; there were no skidmarks. This evidence can be judged in different manners. The trial court obviously believed that such evidence indicated Wilhite's excessive speed and inability to attempt the last clear chance to avoid the accident. The most important direct evidence that allowed the trial court to credit all these inferences of excessive speed was *635 the force of the impact which caused McElroy's van to flip and come to rest on its roof well beyond the intersection. Accordingly, this appellate court must accept all favorable inferences supporting the trier of fact's recognition of Wilhite's speeding and her inattentiveness in avoiding the crash. On top of that, there appears to be potential credibility problems with Wilhite's testimony. Therefore, the trial court's judgment discounting her description of the accident and her actions cannot be disturbed.
As expressed in Chisholm, in my opinion, the appellate court should not give any deference when the trier of fact fails to find a co-tortfeasor negligent. Also, there are very important legislative policies embodied in the Louisiana and national uniform vehicle laws mandating the observance of a stop sign and the yielding of the intersection to the favored traffic, regardless of the speed of that traffic. Those policies were marginalized in my opinion by the appellate courts in Toston and James by their giving too much deference to the fact finders' assignments of minimal fault to drivers who ignored stop signs. Nevertheless, the individual opinion of an intermediate appellate court judge in this state must give way to the views of our highest court. Accordingly, in deference to the trial court's ruling, I cannot find that McElroy can be assessed any more fault for this accident than that assigned to the two stop sign violators in Toston and James, and I respectfully dissent to the majority's apportionment of fault.