917 So.2d 678 (2005)
William Kenneth NELSON, et ux., Plaintiffs-Appellants,
v.
Freddie LAKEY James, et al, Defendants-Appellees.
No. 40,400-CA.
Court of Appeal of Louisiana, Second Circuit.
December 14, 2005.
*679 Rice & Kendig by William F. Kendig, for Plaintiffs-Appellants.
Roundtree, Cox & Guin by Billy J. Guin, Jr., Shreveport, for Defendants-Appellees, Freddie James Lakey and Allstate Ins. Co.
Norman Garner, In Proper Person, Defendant-Appellee.
*680 Before BROWN, CARAWAY and LOLLEY, JJ.
LOLLEY, J.
William Kenneth Nelson and Phyllis Nelson appeal the judgment of the First Judicial District Court for the Parish of Caddo, State of Louisiana which dismissed the Nelsons' claims against Freddie James Lakey[1] and Allstate Insurance Company and which assessed fifty percent liability against co-defendant Norman Garner, along with fifty percent fault to Nelson. For the following reasons, we reverse in part, affirm in part as amended, and render.

FACTS
Norman Garner was the owner of Force K9, a dog training school in Shreveport, Louisiana.[2] He offered services as a dog trainer in dog obedience, aggression, and bite training. On April 5, 2003, William Nelson and Freddie Lakey were both participants in Garner's dog-training class with their dogs. Nelson had his female Rhodesian Ridgeback, and Lakey had his male Akita, Cleo.
During the class in question, Garner had the participants in a formation for a fellowship exercise that attempted to accustom the dogs to the presence of other dogs and/or humans. In the course of this exercise, one handler and his dog would circle a second, stationary handler and his dog. As noted by the trial court in its reasons for judgment, Nelson and his dog were circling Lakey and Cleo; Nelson and his dog encroached upon Lakey's "bubble" or space; and, at that point, Cleo bit Nelson on the arm. The trial court determined that Nelson had provoked Cleo by approaching Lakey from the rear, which was contrary to instructions.
Nelson and his wife, Phyllis, filed suit against Lakey, his insurer, Allstate, and Garner. The parties agreed to a bifurcated bench trial on the issue of liability only  reserving the issue of damages for a subsequent trial. At the close of the evidence, Lakey and Allstate moved for a dismissal of the Nelsons' claims pursuant to La. C.C.P. art. 1672(B), which the trial court deferred until the conclusion of the trial but ultimately granted. The trial court then rendered judgment finding that Nelson was 50% at fault and Garner was 50% at fault. This appeal by the Nelsons ensued. Garner does not appeal.

DISCUSSION
On appeal, the Nelsons bring one assignment of error which includes several issues. The gist of the Nelsons' argument is that the trial court erred in apportioning 50% fault to Nelson, 50% fault to Garner, and no fault to Lakey, the owner and custodian of the dog. For the following reasons, we agree.
Notably, this is not your simple, ordinary dog bite case. Here, we have the legal forces of strict liability and/or negligence of a dog owner weighed with the contractually imposed duty by the owner of the obedience school to his students, along with the voluntary participation and actions of another handler/student. These ingredients mix together creating a gumbo of legal issues to consider in determining eventual liability and the apportionment of fault in this case.
The particular issue in this appeal is what amount of fault Lakey, Nelson, and *681 Garner had in the incident. The Nelsons argue that Lakey shared in that fault, and the trial court erred in not determining so. In considering the relationship between Lakey, owner of the biting dog, and Nelson, the person at the biting end of the dog, the trial court correctly considered the strict liability of the dog owner imposed by La. C.C. art. 2321. After concluding that Nelson provoked the dog, the trial court determined that Lakey was not strictly liable, which ended the trial court's analysis as to Lakey's fault. However, the trial court failed to consider Lakey's fault under an ordinary negligence analysis. After making a strict liability analysis, the trial court should go on to consider a negligence cause of action. Andrus v. L.A.D. Corp., 03-1488 (La.App. 5th Cir.05/26/04), 875 So.2d 124, writ denied, 2004-2095 (La.11/15/04), 887 So.2d 483. Such a failure was an error of law, necessitating a de novo review by this court. Pepper v. Triplet, XXXX-XXXX (La.01/21/04), 864 So.2d 181.
We do agree with the trial court's assessment that Lakey was not strictly liable for the actions of his dog. Louisiana C.C. art. 2321 states:
The owner of an animal is answerable for the damage caused by the animal. However, he is answerable for the damage only upon a showing that he knew or, in the exercise of reasonable care, should have known that his animal's behavior would cause damage, that the damage could have been prevented by the exercise of reasonable care, and that he failed to exercise such reasonable care. Nonetheless, the owner of a dog is strictly liable for damages for injuries to persons or property caused by the dog and which the owner could have prevented and which did not result from the injured person's provocation of the dog. Nothing in this Article shall preclude the court from the application of the doctrine of res ipsa loquitur in an appropriate case.
Article 2321 was amended in 1996, and the Louisiana Supreme Court addressed that amendment in Pepper, supra. The Pepper court noted that:
... to establish strict liability against a dog owner under La. C.C. art. 2321 as amended in 1996, the plaintiff must prove that his person or property was damaged by the owner's dog, that the injuries could have been prevented by the owner, and that the injuries did not result from the injured person's provocation of the dog. We hold that, to establish that the owner could have prevented the injuries under Article 2321, the plaintiff must show the dog presented an unreasonable risk of harm.
In Pepper, the analysis revolved around the second element, that being whether the dog owner could have prevented the injuries from occurring. Such an inquiry, the court determined, required a showing that the dog presented an unreasonable risk of harm. The Pepper court ultimately concluded that the dog in question did not constitute an unreasonable risk of harm considering the context within which the dog bite occurred and strict liability did not apply. However, unlike Pepper, this case hinges on another element of strict liability under article 2321. In the case sub judice, the question of whether Lakey was strictly liable for Cleo centers on the provocation element of the article.
As the fellowship exercise was described at trial, class participants were spread out in intervals with their dogs. The class participants remained stationary as a handler and dog traveled in a circuitous route around them. Prior to Nelson's incident with Cleo, he was traveling through the stationary class participants, and, in fact, was making his third pass *682 around the group. In their testimony, Nelson and Lakey were in agreement that Garner had called for a 10 foot distance between both the stationary class participants and traveling handlers/dogs. They also both agreed that Nelson was bitten when he came unexpectedly around Lakey's back. Nelson admitted that he was within three to five feet of Lakey when he was bitten  a distance Nelson admitted to being too close. Furthermore, we consider the venue in which the biting took place  the purpose of the class was to teach dogs to behave aggressively in a controlled environment; thus, Nelson was aware of the possibility that a dog might react aggressively. Although unintentional, Nelson's action of moving in an area close to Lakey and Cleo, i.e. their "bubble," was what initially provoked Cleo to attack him. Therefore, considering that Cleo was provoked, although unintentionally by Nelson, strict liability under La. C.C. art. 2321 is inapplicable.
However, unlike the trial court, our analysis as to Lakey's fault for Cleo's actions does not end there. Nelson did allege that Lakey was aware of the dangerous propensities of his dog, and he should have taken steps to restrain the dog. Nelson also alleged that Lakey was liable under both theories of strict liability and general negligence. Although we conclude that Lakey is not strictly liable for his dog's actions, La. C.C. art. 2321 is also a source for a claim in negligence by the owner of an animal.
Negligence cases are resolved under the duty/risk analysis which entails five separate elements: (1) whether the defendant had a duty to conform his conduct to a specific standard (the duty element); (2) whether the defendant's conduct failed to conform to the appropriate standard (the breach element); (3) whether the defendant's substandard conduct was a cause-in-fact of the plaintiff's injuries (the cause-in-fact element); (4) whether the defendant's substandard conduct was a legal cause of the plaintiff's injuries (the scope of protection element); and (5) whether the plaintiff was damaged (the damages element). Hornsby v. Bayou Jack Logging, XXXX-XXXX (La.05/06/05), 902 So.2d 361.
Applying these principles to the instant case and particularly to Lakey, we conclude that he acted negligently. Lakey's duty was to keep his animal, Cleo, under his control in order to prevent harm to the other class members. Failing to do so, Lakey breached his duty. Lakey was in the best position to know his dog and control him, and we specifically note the following:
 Lakey was an experienced handler as he had attended more than twenty-five sessions at Force K9, as well as previous obedience classes with Cleo;
 Although Cleo was a large dog (approximately 130 pounds), Lakey was no "90-pound weakling"  he was 6'2" and 280 pounds;
 Lakey was aware he had to hold Cleo's leash tightly in order to control him;
 Cleo had bitten another dog in the previous class, and at the class in question, Lakey was aware that Cleo was "agitated" and "excitable." In fact, Lakey even speculated that Cleo was excited, because they had missed a couple of previous classes;
 Lakey admitted he should have been able to control Cleo from the down position, which Cleo was in.
Garner testified that Cleo only acted as he had been trained. As Garner described, when Nelson pulled away from Lakey's dog, Nelson raised his arm, which Cleo took to be an aggressive action, but which Garner considered justification for *683 the dog's action. However, as justified as the dog might have been, Lakey was not. Lakey knew he was not being attacked by Nelson. He had the discretion that comes from being a human being that he was not actually being attacked by Nelson, even if he was raising his arm. Thus, it was incumbent upon Lakey, i.e., it was his duty, to control his dog. Failing to do so, and considering all of the circumstances and facts involved, he was negligent.
Concluding that the record establishes that Lakey was negligent, we must consider how fault should be re-apportioned among the three parties. In assessing the nature of the conduct of the parties, the various factors influencing the degree of fault the court should assign include: (1) whether the conduct resulted from inadvertence or involved an awareness of the danger; (2) how great a risk was created by the conduct; (3) the significance of what was sought by the conduct; (4) the capacities of the actor, whether superior or inferior; and (5) any extenuating circumstances which might require the actor to proceed in haste, without proper thought. McElroy v. Wilhite, 39,393 (La. App.2d Cir.05/18/05), 903 So.2d 627, citing Watson v. State Farm Fire & Cas. Ins. Co., 469 So.2d 967 (La.1985).
Our consideration of these factors and the facts at hand lead to the conclusion that the trial court correctly assessed Garner with 50% of the fault in this case. We agree with the reasons set forth by the trial court in reaching that determination, and particularly recognize the following:
 Garner's duty as the owner of a dog aggression school to adequately inform and protect his customers from the inherent dangers;
 Garner was negligent in spacing the dogs and handlers and not ensuring that there was enough space to prevent encoachment of their "bubble" and potential provocation;
 Garner failed to adequately inform Nelson of Cleo's aggressive propensity and recent history; and
 Garner negligently placed unexperienced handlers/dogs in a class with experienced handlers/dogs without providing apparent and sufficient guidelines to the class newcomers.
Furthermore, for the reasons discussed herein regarding Lakey's negligence, we assign 40% of the fault in this accident to him. Notably, Lakey admitted that he should have been able to maintain control of Cleo, which he failed to do.
Finally, Nelson is left with 10% of the fault for his part in the incident. As we discussed, although his action was unintentional, he did to some extent provoke Cleo's actions by coming too close to Lakey and Cleo. However, although such action might have been negligent, compared to the duties and actions of Garner and Lakey, Nelson's negligence is minimal, especially when you consider the following facts:
 Nelson was a newcomer to the class, which included both beginning and experienced participants;
 Nelson, a virtual beginner in such dog aggression training, lacked instruction and guidance by Garner;
 He lacked knowledge regarding the aggressiveness of Cleo (particularly of the biting incident the class before); and
 He lacked knowledge regarding the response Cleo would have to his raising his arm in defense.
Considering those facts, Nelson clearly bears only a minimal amount of fault for the incident.

*684 CONCLUSION
For the foregoing reasons, the judgment of the trial court is reversed as it pertains to the comparative negligence of Freddie James Lakey, who we conclude to be 40% at fault; the judgment is amended in part as it pertains to William Nelson, who we conclude to be 10% at fault; and, it is affirmed in part as it pertains to Norman Garner, who we conclude to be 50% at fault. Costs of this appeal are assessed to Lakey and Allstate Insurance Company.
REVERSED IN PART; AFFIRMED IN PART AND AMENDED.
NOTES
[1] This lawsuit was originally and erroneously filed against "Freddie Lakey James," which is why the suit is entitled as such. As stated, the defendant's name is (and was amended in pleadings during the litigation at the trial court) Freddie James Lakey.
[2] The record also refers to Garner's school as Force Canine.