ROLAND L. BELSOME, Judge.
|, Plaintiffs, Leon and Vicki Gutierrez, appeal the trial court’s dismissal of their claims against defendants, Christopher Keller and the City of New Orleans. We find that the trial court was not manifestly erroneous or clearly wrong and affirm.

FACTS AND PROCEDURAL HISTORY

Plaintiffs filed a petition for damages allegedly suffered on July 8, 2006, at the intersection of North Rampart Street and Saint Ferdinand Street, where they were involved in an automobile accident with a “sprint” unit operated by defendant, Christopher Keller.[1]
*305 At the time of the incident, Mr. Keller was a paramedic employed with the City of New Orleans in the process of responding to a code call for assistance. With him as a guest passenger was Dr. Christiane Ei-sele. While traveling south on St. Ferdinand Street, with his lights and sirens activated, Mr. Keller approached a stop sign at the intersection of North Rampart Street and noticed that his view was obstructed by an illegally parked cargo van. He stopped at the stop sign and | ¡.inched forward onto North Rampart Street in order to determine whether it was safe to cross the intersection. By the time he obtained a visual, Mr. Keller observed the Gutierrez vehicle. Believing that his unit would be struck, he attempted to clear the intersection as he had no time to reverse. Mr. Gutierrez, who was traveling eastbound on North Rampart Street, applied his break in attempt to avoid the collision. However, rather than turn away from the “sprint” unit, he turned into it. Keller’s unit sustained minor damage to the rear while the front portion of the Gutierrez vehicle had received minor damage.
After a bench trial, the trial court entered judgment in favor of the defendants, dismissing the plaintiffs’ claims with prejudice. The trial court found that the plaintiff-driver, Mr. Gutierrez, failed to recognize and yield to the “sprint” unit that had activated its lights and sirens. It further found that Mr. Gutierrez had the last clear chance to avoid the accident; however, rather than turn his vehicle away from the “sprint” unit, he turned his vehicle toward it. From the judgment dismissing their claims, the plaintiffs filed the instant appeal.

STANDARD OF REVIEW

It is well-settled in Louisiana that under the manifest error standard of review, a factual finding cannot be set aside unless the appellate court determines that it is manifestly erroneous or clearly wrong. Salvant v. State, 2005-2126, p. 5 (La.7/6/06), 935 So.2d 646, 650 (citing Smith v. Louisiana Dept. of Corrections, 1993-1305 (La.2/28/94), 633 So.2d 129, 132; Stobart v. State through Dept. of Transp. and Development, 617 So.2d 880, 882 (La.1993); and Rosell v. ESCO, 549 So.2d 840, 844 (La.1989)). Accordingly, to reverse a factfinder’s determinations, an appellate court must review the record in its entirety and find |anot only that a reasonable factual basis does not exist, but also that the record establishes the factfinder is clearly wrong or manifestly erroneous. Id.
Likewise, an appellate court cannot reweigh the evidence or substitute its own factual findings because it would have decided the case differently. Id.; Pinsonneault v. Merchants & Farmers Bank & Trust Co., 2001-2217 (La.4/3/02), 816 So.2d 270, 279. Where there are two permissible views of the evidence, the factfinder’s determinations cannot be manifestly erroneous or clearly wrong; however, where documents or objective evidence so contradict the witness’s story, a court may find manifest error. Salvant, 2005-2126 at p. 5, 935 So.2d at 650 (citing Rosell, supra at 844-45). Conversely, where such factors are not present, and a factfinder’s determination is based on its decision to credit the testimony of one or more witnesses, “that finding can virtually never be manifestly *306 erroneous or clearly wrong.” Id.; see also Rosell, supra.

DISCUSSION

Plaintiffs argue that the trial court committed manifest error when it found no negligence on behalf of defendants, Keller and the City of New Orleans. In support of this argument, plaintiffs contend that: 1) Keller was the disfavored driver; and 2) the immunity provisions that apply to emergency vehicles are not applicable to this case.

Duty of Motorist at a Stop Sign

In support of their assignment of error, the plaintiffs first argue that Mr. Keller was the disfavored driver since he had the stop sign and failed to make certain that it was safe to cross the intersection. They further assert that they could not avoid the accident.
14Mr. Keller’s travel was controlled by a stop sign at the intersection of St. Ferdinand and North Rampart Street. La. R.S. 32:123 sets forth the duty of a motorist confronted with a stop sign. After stopping, the statute mandates that a driver “yield the right-of-way to all vehicles which have entered the intersection from another highway or which are approaching so closely on said highway as to constitute an immediate hazard.” La. R.S. 32:123(B).
Louisiana courts have consistently held that a driver confronted with a stop sign at an intersection must bring his vehicle to a stop, appraise the traffic, and make sure the way is clear before he enters the intersection. McElroy v. Wilhite, 39,393, 39,394, p. 3 (La.App. 2 Cir. 5/18/05), 903 So.2d 627, 631. A driver must also look for and then evaluate oncoming traffic before proceeding. Id., 39,393 at p. 4, 903 So.2d at 631. The duty also includes looking a second time before entering. Id.; see also Continental Ins. Co. v. Duthu, 235 So.2d 182 (La.App. 4 Cir.1970). Moreover, in Louisiana, if a motorist fails to see what he should have seen, the court examines his subsequent conduct on the premise that he did see what he should have seen. Fernandez v. General Motors Corp., 491 So.2d 633, 636-37 (La.1986).
Stopping, therefore, does not fully discharge the duty of a driver negotiating an intersection such as the one presented in the case sub judice. Rather, Mr. Keller had a duty not only to stop at the sign, but to make sure after having stopped that it was safe to proceed further through the median and across the eastbound lanes of travel on North Rampart. See Klaveness v. Massey, 1999-867, p. 4 (La.App. 5 Cir. 2/16/00), 756 So.2d 538, 542. See also Atwood v. State Farm Auto. Ins. Co., 1995454, pp. 3-4 (La.App. 5 Cir. 12/13/95), 666 So.2d 1187, 1190 (duty to keep a proper lookout).
Un contrast to the above-cited duty of the motorist confronted with a stop sign, the duty of the motorist traveling on the favored street is quite minimal as noted in Fernandez v. Gen. Motors Corp., supra, wherein the Supreme Court stated:
A motorist on a right-of-way street is entitled to assume that motorists on the disfavored street approaching a stop sign will obey the traffic signal and will stop, look and yield the right of way to traffic proceeding on the favored street. Of course, once a right-of-way motorist in the exercise of ordinary vigilance sees that another motorist has failed to yield the right of way, a new duty evolves on the right-of-way motorist to take reasonable steps to avoid an accident if there is time enough to afford him a reasonable opportunity to do so. (Citations omitted.)
Fernandez v. Gen. Motors Corp., 491 So.2d at 636. With regard to the favored motorists’ duty, the courts have clarified, noting:
*307 Furthermore, it is only in the exceptional case where the right of way motorist could have avoided the accident by the exercise of the very slightest degree of care that he will be considered guilty of negligence.
See Modica v. Manchester Ins. & Indemn. Co., 284 So.2d 791 (La.App. 4 Cir.1973); McElroy v. Wilhite, 39,393 at p. 4, 903 So.2d at 631; Edwards v. Pierre, 2008-0177, p. 8 (La.App. 4 Cir. 9/17/08), 994 So.2d 648, 655.
Citing to McElroy, supra, and Modica, supra, the plaintiffs agree that Mr. Keller would be negligent for proceeding into the path of oncoming vehicles unless the plaintiffs could have avoided the accident by exercising the “slightest degree of care.” To support their conclusion that Mr. Keller was 100% negligent in causing the accident, they refer to Mr. Keller’s testimony that he entered the intersection although his view was obstructed. They also refer to his testimony that he did not believe that Mr. Gutierrez could have avoided the accident.
However, Mr. Keller also testified that he stopped at the intersection and inched forward to determine whether it was safe to cross. Most significantly, both | ^drivers testified that Mr. Gutierrez turned into rather than away from the “sprint” vehicle. In its reasons for judgment, the trial court explicitly relied on this fact as the basis for its finding that Mr. Gutierrez could have avoided the accident by using the slightest degree of care.
Where there are two permissible views of the evidence, the factfinder’s determinations cannot be manifestly erroneous or clearly wrong. Salvant, 2005-2126, p. 5, 935 So.2d at 650. Since the trial court’s conclusions are supported by the record, we find that its ruling was not manifestly erroneous.

Immunity

Next, the plaintiffs argue that the immunity provisions provided to emergency vehicles do not apply to this case.
The immunity provision applicable to emergency vehicles is found in La. R.S. 32:24, and provides:
A. The driver or rider of an authorized emergency vehicle, when responding to an emergency call, or when in the pursuit of an actual or suspected violator of the law, or when responding to, but not upon returning from, a fire alarm, may exercise the privileges set forth in this Section, but subject to the conditions herein stated.
B. The driver or rider of an authorized emergency vehicle may do any of the following:
(1) Park or stand, irrespective of the provisions of this Chapter.
(2) Proceed past a red or stop signal or stop sign, but only after slowing down or stopping as may be necessary for safe operation.
(3) Exceed the maximum speed limits so long as he does not endanger life or property.
(4) Disregard regulations governing the direction of movement or turning in specified directions.
C. The exceptions herein granted to an authorized emergency vehicle shall apply only when such vehicle or bicycle is making use of audible 17or visual signals, including the use of a peace officer cycle rider’s whistle, sufficient to warn motorists of their approach, except that a police vehicle need not be equipped with or display a red light visible from in front of the vehicle.
D. The foregoing provisions shall not relieve the driver or rider of an authorized vehicle from the duty to drive or ride with due regard for the safety of all *308 persons, nor shall such provisions protect the driver or rider from the consequences of his reckless disregard for the safety of others.
In discussing the dual standard, the Louisiana Supreme Court determined that “[i]f, and only if, an emergency vehicle driver’s actions fit into subsections A, B, and C of La.Rev.Stat. 32:24, an emergency vehicle driver will only be held liable only for actions which constitute reckless disregard for the safety of others.” Lenard v. Dilley, 2001-1522, p. 6 (La.1/15/02), 805 So.2d 175, 180. The emergency vehicle driver’s actions will be gauged by the standard of due care when the actions do not fit subsections A, B, and C. Id.
The plaintiffs do not dispute the fact that Mr. Keller was responding to an emergency call in an authorized emergency unit at the time of the accident. Thus, subsection A is met. Rather, they argue that Mr. Keller’s actions did not conform to the requirements of subsections B, C, and D.
Plaintiffs aver that Mr. Keller proceeded past the stop sign without slowing down or stopping as was necessary for safe operation, disregarding subsection B. As to subsection C, the plaintiffs assert that the emergency lights and siren were insufficient to warn motorists of their approach. They highlight the fact that Mr. Keller admitted the emergency lights on the “sprint” unit were more difficult to see during the day. They also contend that they did not hear the siren. As to subsection D, the plaintiffs maintain that Mr. Keller did not exercise due regard for the safety of all persons when he inched out then “pulled totally into the blind | ^intersection.” Finally, the plaintiffs argue that even if this Court determines that the subsections of A, B, and C are satisfied, the reckless disregard standard should apply to find Mr. Keller at fault in causing the accident.
As already discussed, the trial court determined that Mr. Keller stopped at the stop sign, and then inched forward to determine whether he could safely cross North Rampart Street. It further determined that Mr. Gutierrez failed to recognize and yield to the “sprint” vehicle which was using its emergency lights and signal. The trial court also stated that the police report contained a statement from a now-deceased witness that the siren was activated. These factual findings are supported by the testimony of Mr. Keller and Dr. Eisele.
In support of their argument, plaintiffs cite to Spears v. City of Scott, 2005-230 (La.App. 3 Cir. 11/2/05), 915 So.2d 983, where the appellate court found that the police officer’s actions in approaching and then continuing on through the intersection constituted gross negligence and that the officer’s siren was insufficient to warn motorists of his immediate approach to the intersection. In Spears, the appellate court noted that Subsection (B)(2) of LSA-R.S. 32:24 allows the driver of an emergency vehicle to proceed past a stop signal, but only after slowing down or stopping “as may be necessary for safe operation.” The trial court found that the driver “came to a rolling stop at the intersection, but that he did not continue to monitor traffic when he entered the intersection, even though he was traveling through the intersection against a red light.”
Spears can be distinguished from the instant case. In Spears the officer failed to maintain a lookout before he proceeded. Therefore, the immunity provisions of LSA-R.S. 32:24 were inapplicable. In the instant case, there is no ^evidence that Mr. Keller failed to maintain a lookout as he proceeded into the roadway. Likewise,' *309 the record fails to support a claim for gross negligence.
Pursuant to our review of the record, we cannot find the trial court’s conclusions to be manifestly erroneous or clearly wrong.

CONCLUSION

Accordingly, the judgment of the trial court dismissing the plaintiffs’ claims is affirmed.
AFFIRMED

. Mr. Keller testified that a sprint unit supplements the response for ambulances. The "sprint” unit he was driving was a Ford Explorer, which had a light bar across the top *305 and numerous decals identifying the vehicle as an emergency medical services unit. It had the same equipment as an ambulance, just less, and it could make a transport to the hospital for minor complaints. At times, physicians would ride in the units allowing the unit to respond to more critical calls where a patient would benefit from having a physician on scene.