STEWART, J.
.|,The defendants, Sarah Tugwell (“Tug-well”) and her insurer, American National General Insurance Company, appeal a judgment finding them liable for damages to the plaintiffs, Joseph Solomon (“Solomon”)' and Betty Blount (“Blount”), stemming from an automobile accident. Blount entered the intersection from a stop sign after being beckoned by a phantom driver stopped in traffic. Tugwell, who was. traveling on the favored roadway, collided into the.vehicle driven by Blount. The trial court assigned 80 percent of the fault to Tugwell. and 20 percent to Blount. Finding no basis for the trial court’s finding of any fault on the part of Tugwell, we reverse the trial court’s judgment.
FACTS
The vehicular accident occurred on January 23, 2013, in Monroe at the intersection of North 8th Street, which is controlled by a stop sign, and Louisville Avenue, the favored four-lane, east-west thoroughfare. The plaintiffs were traveling on North 8th Street, with Blount driving a Hyundai Elantra owned by Solomon, who Was in the front passenger seat. Tugwell was traveling west on *1026 Louisville and was driving a Chevrolet Tahoe.
Blount and Solomon testified that, when they came to the stop sign at the intersection, the traffic in the outside westbound lane of Louisville was backed up due to an accident further up the roadway at the intersection of Louisville and North 6th Street. After waiting at the stop sign for five to ten minutes, the driver of a vehicle stopped at the intersection in the westbound lane of traffic waved them through. Both Blount and Solomon testified that they had noticed the Tahoe sitting in the westbound lane of traffic a few | ¿vehicles behind the vehicle of the driver who waved them through. They testified that as Blount entered the intersection, the Tahoe darted into the inside westbound lane of Louisville and then collided into the driver’s side of the Elantra in the inside westbound lane of Louisville.
Tugwell testified that she had turned onto Louisville from Sleepy Hollow, which was about one or two blocks before the intersection where the accident occurred. She claimed that she entered and remained traveling in the inside westbound lane. She testified that traffic on Louisville was congested, but moving. She did not notice that any traffic was stopped or that there was an accident ahead at Louisville and North 6th Street. As she approached the intersection at North 8th Street, Tugwell glimpsed a car that appeared to be running the stop sign. She was unable to avoid the collision. She testified that she was not speeding, and she was not ticketed by the police.
Corporal L. Quillar of the Monroe Police Department arrived at the accident scene within minutes. The vehicles were still on the roadway where the accident had occurred. Quillar spoke to both drivers and Solomon. According to Quillar, Tugwell reported that she swerved to avoid the car as it pulled out in front of her from the stop sign. Quillar testified that the damage to the Tahoe’s right front quarter panel was consistent with what Tugwell reported. Quillar testified that Blount reported that another driver waved her through the intersection and that she did not see the Tahoe approaching in the inside lane. Quillar ticketed Blount for failure to yield at the stop sign. Quillar indicated that Blount would have been unable to see Istraffic approaching in the inside lane and that it was not safe driving for her to proceed across just because another driver waved her through.
The plaintiffs also presented testimony from the. officer who worked the accident at Louisville and North 6th Street. That officer indicated that the flasher lights on his vehicle would have been activated so as to alert motorists to drive with caution due to the emergency situation. He also testified that an ambulance and the fire department also responded to the accident. He did not indicate whether the lights on those vehicles were also activated.
In a written ruling, the trial court found that traffic on Louisville was congested and backed up due to the prior accident at the North 6th Street intersection. The trial court also found that an unknown motorist beckoned Blount to proceed from the stop sign and that the Elantra was then struck by the Tahoe in the inside westbound lane of Louisville. The trial court believed Blount’s and Solomon’s claim that Tugwell moved from the outside lane to the inside lane and found that Tugwell’s failure to notice the emergency vehicles and flashing lights from the prior accident ahead indicated her “obliviousness to her surroundings.” Though recognizing that a motorist at a stop sign must yield to favored traffic, the trial court found that “Blount had sufficiently established herself in the traffic flow crossing Louisville to the *1027 extent that oncoming traffic on Louisville had an obligation to exercise due care to avoid a collision.” The trial court assigned 20 percent of the fault to Blount and 80 percent to Tugwell. Accordingly, the trial court rendered judgment in favor of the plaintiffs ^awarding damages in the amounts of $2,200 to Solomon and $6,158.33 to Blount.
Challenging the allocation of fault and the award of damages, the defendants’ filed a suspensive appeal.
DISCUSSION
The defendants argue that the trial court erred in assigning 80 percent of the fault to Tugwell and minimal fault to Blount. They argue that, even accepting the version of events related by Blount and Solomon, there is no evidence in the record to support the assignment of any fault to Tugwell.
A trial court’s factual findings are accorded great weight and will not be disturbed on appeal absent manifest error. Rosell v. ESCO, 549 So.2d 840 (La.1989). The allocation of fault is a question of fact for the trial court to decide. Underwood v. Dunbar, 628 So.2d 211 (La.App. 2d Cir. 1993), writ denied, 94-0026 (La.2/25/94), 632 So.2d 767. The appellate court should not disturb the trial court’s allocation of fault unless it is clearly wrong or manifestly erroneous. Adams v. Rhodia, Inc., 07-2110 (La.5/21/08), 983 So.2d 798. After reviewing the entire record, the appellate court may reverse the trier of fact’s findings if there is no reasonable factual basis for such findings, and the record establishes that the trier of fact was clearly wrong or manifestly erroneous. Salvant v. State, 05-2126 (La.7/6/06), 935 So.2d 646; Stobart v. State Through DOTD, 617 So.2d 880 (La.1993).
In Watson v. State Farm Fire and Cas. Ins. Co., 469 So.2d 967, 974 (La.1985), the supreme court set forth the following factors to be | ¿considered in reviewing the allocation of fault for manifest error: (1) whether the conduct resulted from inadvertence or involved an awareness of danger; (2) how great a risk was created by the conduct; (3) the significance of what was sought by the conduct; (4) the superi- or or inferior capacities of the actors; and (5) the existence of extenuating circumstances that might have required the actor to proceed in haste, without proper thought. Consideration should also be given to the relationship between the fault / negligent conduct and the harm to the plaintiff. Id.
We look first to the conduct of the parties in light of their respective duties. La. R.S. 32:123(B) sets forth the duty applicable to a motorist approaching a stop sign at an intersection:
Except when directed to proceed by a police officer or traffic-control signal, every driver and operator of a vehicle approaching a stop intersection indicated by a stop sign shall stop before entering the cross walk on the near side at a clearly marked stop line, but if none, then at the point nearest the intersecting roadway where the driver has a view of approaching traffic on the intersecting roadway before entering the intersection. After having stopped, the driver shall yield the right of way to all vehicles which have entered the intersection from another highway or which are approaching so closely on said highway as to constitute an immediate hazard.
After stopping, the motorist may not proceed until the way is clear. The stopped motorist must look for and evaluate oncoming traffic and look a second time before proceeding. McElroy v. Wilhite, 39,393 (La.App.2d Cir.5/18/05), 903 *1028 So.2d 627. When an intersection is blind or partially obstructed, the duty to determine that the way is clear before proceeding is heavy and requires a great degree of care. Toston v. Pardon, 2003-1747 (La.4/23/04), 874 So.2d 791. A driver has a duty to proceed with extraordinary caution when entering a superior roadway where his view is ^obstructed. Id. Taylor v. State, 431 So.2d 876 (La.App. 2d Cir.1983).
In contrast to the relatively heavy duty on a motorist at a stop sign, the motorist with the right of way has a minimal duty. McElroy, supra. It is a duty of ordinary care toward drivers entering from side streets. Id. A favored motorist is entitled to assume that a vehicle approaching a stop sign will stop, look, and yield the right of way to the traffic on the favored roadway. Id., citing Sanchez Fernandez v. Gen. Motors Corp., 491 So.2d 633 (La.1986). If the motorist with the stop sign fails to yield the right of way, then the favored motorist has a duty to take reasonable steps to avoid an accident, provided there is enough time to do so. Id. The favored motorist will be considered negligent only where he could have avoided the accident by exercising the “very slightest degree of care/’ McElroy, 39,-393, p. 4, 903 So.2d at 633.
The doctrine of preemption applies to an entering driver when the driver maintained a proper lookout and entered the intersection when reasonably safe to do so. Cloney v. Smith, 441 So.2d 342, 345 (La.App. 5th Cir.1983), writ denied, 444 So.2d 608 (La.1984), and cases cited therein. When an entering motorist has lawfully preempted the intersection, a favored driver who is speeding and fails to yield to the entering motorist will be held negligent. Id. In Cloney, supra, the appellate court affirmed the trial court’s finding that the defendant, the driver with the the right of way, was at fault. The evidence showed that the plaintiff, Ms. Cloney, had stopped at the stop sign and then cautiously entered the intersection after determining the way was clear. However, the defendant had pulled into the 17favored street at a rapid speed and attempted to go around the plaintiffs vehicle, rather than yield the right of way.
In McElroy, supra, this court reversed a judgment that found Ms. Wilhite, the motorist traveling on the 'favored roadway, 100% at fault for the collision at an intersection. In light of the duties cited above, the court rendered a judgment allocating 80% of the fault to McElroy, the motorist controlled by a stop sign and 20% of the fault to Wilhite, the motorist traveling on the road with the right of way. Although McElroy claimed to have come to a complete stop and to have looked both ways before proceeding, his vehicle was struck before he even traveled past the middle of the intersection. Thus, this court concluded that he did not keep a lookout for oncoming traffic at the intersection before proceeding. A minimal amount of fault was allocated to Wilhite, who was traveling faster than the posted speed limit when she hit McElroy’s vehicle.
In the matter before us, the record indicates that Blount stopped at the stop sign but could not cross the intersection because of traffic backed up in the outside westbound lane of Louisville. She waited between- five and ten minutes, then attempted to cross when waived through by a driver stopped in the traffic at the intersection. The record does not show that Blount knew the driver who waived her through, "that the phantom driver had checked for traffic, or that the phantom' driver intended to convey that it was safe to cross. According to Officer Quillar, Blount would not have been able to see vehicles approaching in the inside lane. Blount’s testimony shows Officer Quillar’s *1029 assessment to be correct. Blount testified that she stopped again in |sthe outside westbound lane to look for traffic before entering the inside westbound lane where the collision occurred.
On these facts, we find no support in the record for the trial court’s application of the doctrine of preemption to benefit Blount. The evidence does not show that Blount had “established herself in the traffic flow crossing Louisville to the extent that the oncoming traffic ... had an obligation to exercise due care to avoid a collision.” Rather, Blount did not maintain a proper lookout or enter the intersection when reasonably safe to do so. Blount pulled from the stop sign when waved through by the unknown driver in conditions where she could not see oncoming traffic in the inside westbound lane.
The record shows that Tugwell was traveling on Louisville and had the right of way. Even though traffic was backed up in the outside westbound lane due to another accident a couple of blocks ahead on Louisville, there was no evidence that the inside westbound lane was closed. The record does not show the distance between the two intersections and does not show that Tugwell’s failure to notice the accident two blocks ahead caused her to collide into the plaintiffs’ vehicle. Whether Tugwell had been traveling in the inside lane as she testified or whether she moved into that lane as claimed by Blount and Solomon, she had the right of way. Nothing in the record suggests that Tugwell was speeding, and she was not cited for any traffic violation;
Considering the factors set forth in Watson, supra, we find that the trial court committed manifest error in allocating Tugwell with 80% of the |9fault. Blount’s actions in entering the intersection from a stop sign because an unknown driver stopped in traffic waved her through Was a risky maneuver that involved an awareness of the danger as shown by Blount’s account of how she prpceeded from the stop sign then stopped again in the outside westbound lane to check for oncoming traffic. Her actions show that she could not determine from her vantage at the stop sign that the way a'cross Louisville was clear. Though Blount testified that she was going to work after she took Solomon to his home, she did not testify that she was running late .or give any reason that would have required her to proceed in haste before the traffic cleared from the intersection. Solomon testified that if they had not tried to cross the intersection when waved through, they would have had to wait longer. We do not find this justification for Blount’s risky maneuver.
On these facts, we find that the trial court committed manifest error in allocating 80 percent of the fault to Tugwell. The record' shows that' the fault belongs to Blount.
CONCLUSION
For the reasons stated, we reverse the trial court’s judgment in favor of the plaintiffs, Joseph Solomon and Betty Blount, and render judgment dismissing the plaintiffs’ claims. Costs of appeal are assessed to the plaintiffs.
REVERSED.